FILED
SUPERIOR COURT
OF GUAM

2019 MAY 14 AM 10: 25

CLERK OF COURT

BY:



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| CASSANDRA NICOLE CLAY,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES EDWARD CLAY<br><br>Defendant. | Case No. DM0082-16<br><br>**AMENDED<br>DECISION AND ORDER** |

## INTRODUCTION

The parties will both be moving off island and have each moved to modify custody of their children, with Plaintiff also moving to modify child support. This matter is before the Honorable Michael J. Bordallo. Plaintiff Cassandra Nicole Clay ("Plaintiff") is represented by Joaquin C. Arriola, Jr., Esq. of Arriola, Cowan & Arriola. Defendant James Edward Clay ("Defendant") is represented by Daniel S. Somerfleck, Esq. of Somerfleck & Associates, PLLC. Having considered the arguments and the applicable law, the Court hereby **DENIES** both Defendant's motion to modify custody and Plaintiff's motion to modify custody and child support.

## BACKGROUND

This matter arises out of Defendant's Motion for Clarification of Custody or in the Alternative to Modify Custody and Memorandum of Points and Authorities ("Motion"), filed Mar. 18, 2019. Plaintiff filed an opposition and a countermotion for child custody and support on Apr. 15, 2019. Defendant filed a reply to Plaintiff's opposition on Apr. 19, 2019. Plaintiff filed a response to the reply on May 8, 2019. The matter is now before the Court.

## FACTS

1. The parties were married on Feb. 19, 2010 in Surprise, Arizona and filed a Complaint for Divorce on Feb. 8, 2016 after six years of marriage.

2. Two children were born of the marriage, Amare Jayden Clay (DOB 3/21/2010), a boy, and Aaliyah Jordan Clay (DOB 7/21/2013), a girl.

3. On Feb. 23, 2016, the Court issued an Interlocutory Judgment of Divorce ("Interlocutory Judgment") and a Final Judgment of Divorce ("Final Judgment") reaffirming and incorporating the provisions of the Interlocutory Judgment.

4. The parties also created a Marital Agreement that the Court approved and incorporated into the Interlocutory Judgment and Final Judgment.

5. Per the Marital Agreement, the Court ordered the parties to share joint legal and physical custody of the two minor children and to strive to spend equal time with them. The children were to alternate residence with each parent on a weekly basis.

6. If at some future point the parties were to move away from Guam, the Court ordered that custody of the children would alternate between parties every school year, as established in the Marital Agreement.

7. Also, per the Marital Agreement, neither party would pay child support because each parent would have the children 50% of the time. The Marital Agreement stated that Plaintiff would provide health insurance for the children.

8. Both parties are members of the military and are both now being transferred off Guam. Plaintiff is scheduled to relocate to Arizona on June 14, 2019, and Defendant is scheduled to relocate to Illinois soon, possibly in May 2019.

9. Now that the parties are leaving Guam, the Marital Agreement provision would commence that stated the parties would alternate school years with physical custody of the children if they ever leave Guam.

10. In the upcoming school year, Amare, age 9, will be in third grade, and Aaliyah, age 5, will start kindergarten.

11. Defendant wants physical custody of the children the first year after they leave Guam, and he requests that the Court leave untouched the custody order as outlined in the Marital Agreement. He wants physical custody the first year because he is concerned that if Arizona becomes the children's new home state, after six months into their residency, Plaintiff would modify the current custody order under Arizona law, and he does not want Plaintiff to modify the custody order. Alternatively, he proposes to modify the custody order so that he becomes custodial parent during every school year and Plaintiff becomes custodial parent during the children's vacations from school.

12. Plaintiff also wants custody the first year, but she proposes to modify custody so that instead of the children spending just the first year with her in Arizona, they spend the first three years with her there. She argues that this is best because the children are young and need stability, she has a great deal of extended family in Arizona, the children will grow up with their two-year-old step-brother, and Plaintiff has already

enrolled the children in several programs and schools, including Aaliyah, who has been enrolled in a special program sponsored by the military for children with asthma.

13. Plaintiff also claims that Defendant led her to believe that she would have custody the first year, and relying upon that assurance, she made all of the arrangements for the children in Arizona.

14. In addition, Plaintiff wants to modify the child support order, which originally called for no support from either party since they would each have the children 50% of the time. However, now Plaintiff wants the custodial parent to receive child support from the non-custodial parent. In sum, Plaintiff wants the children for the first three years they live in Arizona, and she wants Defendant to pay her child support during that time.

15. The matter is now before the Court.

## ISSUE

1. Whether to modify the current child custody and child support order.

## PRINCIPLES OF LAW

The Court's decisions regarding child custody are governed by Section 8404 of Title 19 of the Guam Code Annotated. 19 G.C.A. § 8404. It is well settled that the Court must establish the custody arrangement based on the best interests of the child. Id. at (a)(1). When determining what is within the child's best interests, the Court may consider a multitude of factors, including what is best for that child's moral, physical, mental, and spiritual well-being. Id. at (a)(5); see also Howerton v. Howerton, 2004 Guam 8, ¶ 25 (providing additional factors to weigh in a custody decision, like the child's age, habits, schooling, and extra-curricular activities, and the parents' jobs and fitness). In addition to the best interests of the child, the Court must also consider the legislative preference for joint custody and the legislative policy that children should spend "as much time with each of their parents as possible when the parents are not

living together." 19 G.C.A. § 8404 at (a)(8). The Supreme Court of Guam has stated, "Title 19 of the Guam Code Annotated, read as a whole, reflects the legislature's underlying policy that whenever possible, the sanctity of family life should be preserved by the inclusion of both parents in the lives of their children." Flores v. Cruz, 1998 Guam 30, ¶ 11. The Supreme Court of Guam has also held that children are required to spend substantial time, but not necessarily equal time, with each parent in a joint physical custody arrangement. Lanser v. Lanser 2003 Guam 14 ¶13. However, "The holding of Lanser that equal time is not *required* under a joint custody plan does not affect the clear legislative policy that equal time is preferred," and equal time "should be granted to the greatest extent possible." Howerton, at ¶ 19 (emphasis in original). In order to deviate, the standard is clear: "A trial court may deviate from an equal time arrangement if it is within the child's best interests." Id. at ¶ 20. With regard to changing a custody order that is already in place, the Supreme Court of Guam has established that "there must generally be a persuasive showing of changed circumstances affecting the child." Lanser at ¶ 9 n.2.

The Guam Code gives the Court authority to modify a child support order "upon a showing of substantial and material change of circumstances." 5 GCA § 34121; see also Lanser at ¶ 19 n.3.

ANALYSIS

The Court recognizes that a major change will occur in the lives of the minor children as they move with their parents from Guam to the continental United States and as they stop the routine of alternating weeks residing with each parent. The Court acknowledges that Plaintiff appears to have created a welcoming setting for the children in Arizona, including with schools and programs, extended family, and a home in a safe neighborhood. However, the Court expects that Defendant, who appears to be an attentive father, will also provide a suitable

environment for the children in Illinois. Presumably both Plaintiff and Defendant have been largely satisfied with the equal time custody arrangement during the past three years, in light of the information in each party's filings, and considering the absence of any motion to modify custody during that time. Although uprooting children at the end of each year to spend equal time with each parent is not ideal, it is not clear to the Court that being uprooted after three years is a superior arrangement or that the age of the children should dictate whether they would be better off staying either one year or three years with one parent before transferring to the other. It is also not clear to the Court that it is preferable for children to spend the school years with one parent and summers and vacations with the other. In this case, the Court views both parents as competent, attentive, and loving. The Court is not otherwise persuaded by some of the minor evidence the parties have brought to the contrary. Guam statutes and case law make it clear that the default arrangement for physical custody of children is equal time with each parent unless it is within the child's best interest to deviate from that norm. Here, the Court is not persuaded that it is in the children's best interest to deviate from the arrangement the parents already agreed to in the Marital Agreement, which is that if they leave Guam, they will alternate one full year each with the children.

Therefore, the Court will not change the order but rather will affirm the order in the Interlocutory Judgment that custody will alternate between the parties every school year. Considering that Plaintiff has made significant arrangements for the children in Arizona, and in the apparent absence of similar arrangements by Defendant in Illinois, the Court will order the children to spend the first year with Plaintiff in Arizona. The parties will then alternate having physical custody of the minors each year, exchanging custody of the minors at the midpoint day of the summer break. The parties will calculate the midpoint day of summer break by determining the last day of school at the custodial parent's residence and the first day of school

at the receiving parent's residence and identifying the day halfway through that period. If there is an even number of days in that period, the children may be exchanged on the first day of the receiving parent's custody. The Court orders that by 90 days before the end of each school year, the parties must communicate about and agree upon the day during the coming summer break on which they will exchange their children. The receiving parent will make travel arrangements and pay for the transfer of the children.

Regarding child support, the Court is not persuaded that there has been a substantial and material change in circumstances. It appears that both parties work in the same active duty military jobs they have had for years, including before and after the divorce. No additional income or expenses appears to have arisen for either party. In the absence of a substantial and material change in circumstances, the Court will not deviate from the child support order already established by the Marital Agreement, which is that neither party will pay child support. The parties will continue to have physical custody of the children 50% of the time, albeit on a yearly rather than a weekly basis. Therefore, the expenses for each party will remain approximately equal.

## CONCLUSION AND ORDER

It is ORDERED:

1. Custody in this case will remain as established in the Marital Agreement, which is that once the parties move off Guam, the children will spend alternating years in the custody of each parent.

2. Plaintiff will have physical custody of Amare Jayden Clay (DOB 3/21/2010) and Aaliyah Jordan Clay (DOB 7/21/2013) during the first year after the parties leave Guam.

3. The parties will exchange custody of the minors on the midpoint day of the summer break each year, or if there is an even number of days during the summer break, on the first day of the receiving parent's custody. The receiving parent will make travel arrangements and pay for the transfer of the children.

4. Child support will remain as established in the Marital Agreement, which is that neither party will pay child support.

SO ORDERED, this __/4__ day of __May__ 2019.

HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the
origin' hereh. was placed in the
court box or:

Date: _____ Time: _____

Deputy Clerk, Superior Court of Guam